G. H. KYLE, RESPONDENT, v. THE FIDELITY & CASUALTY COMPANY OF NEW YORK, APPELLANT.—244 SW (2) 418.

Springfield Court of Appeals. December 5, 1951.

514

*Orville C. Winchell* for Appellant.

*Fields & Low* and *Jean Paul Bradshaw* for Respondent.

BLAIR, J.—This is a suit for damages upon a policy of insurance, with $50.00 deductible, issued by appellant to respondent, covering a collision between respondent's automobile and a railroad engine on or about October 23, 1949, at Lebanon, Missouri. Respondent was plaintiff in that suit, and appellant was defendant.

The jury awarded plaintiff $600.00 damages to the automobile, with $15.00 interest on that amount, from the time the suit was filed until tried, with a further sum of $300 as attorney's fees, and damages in the amount of $61.50, both of the latter two being for alleged vexatious delay, or a total sum of $976.50.

The trial court overruled appellant's motion for a new trial, upon condition that respondent remit the sum of $40.00 from such judgment, which respondent remitted, making a final judgment of $936.50. It is from such judgment, and after such remittitur, that defendant has appealed.

The appeal was argued in this Court on October 1, 1951. Both appellant and respondent have filed briefs herein. An examination of appellant's brief shows that it alleged only three errors.

Appellant first attacks instruction 2 to the jury in three ways. It first complains of such instruction because it authorized the jury to render verdict against appellant for a penalty; secondly, because such instruction was alleged to be broader than the pleadings and the evidence, and thirdly, because such instruction was a "mere abstract statement of the law" and confusing to the jury.

In addition to its complaint of instruction 2, appellant contends that the verdict returned by the jury, even after such remittitur, is "erroneous and excessive."

Appellant also contends that the trial court committed error in overruling defendant's motion for a directed verdict, at the close of all the testimony and at the close of defendant's testimony, for several reasons.

It was conceded that appellant issued to respondent its policy of insurance, less $50.00 deductible, protecting respondent against damage to his automobile. It was also conceded that such automobile was damaged to some extent, within the period covered by such policy of insurance, while being driven by the son of respondent, by collision with a locomotive in Lebanon, Missouri, on or about October 23, 1949.

Respondent claimed that the automobile was valueless, after such collision, and appellant contended that, while such automobile was damaged to some extent by such collision, it had *some* value and plaintiff's loss was not as great as was contended by him. There was substantial evidence both ways and the verdict, if the jury was properly instructed, settled the question of the extent of such damage. (Ford v. Louisville & Nashville R. Co. 196 S. W. (2d) 163, l.c. 167; Rockenstein v. Rogers, 31 S. W. (2d) 92, l.c. 798; Johnson v. Thompson, 236 S. W. (2d) 1, l. c. 7; Bray v. St. Louis-San Francisco Ry. Co. 236 S. W. (2d) 758, l. c. 761.

As appellant now contends that the jury was improperly instructed in instruction 2, it becomes necessary for us to set out such instruction in full. It is as follows:

"The Court instructs the jury that if you find for the plaintiff on the policy, and if you further find that the defendant Insurance Company agreed to pay plaintiff for any damage to his automobile in excess of Fifty Dollars ($50.00) resulting from a collision or upset, and if you further find that the defendant insurance company has refused to pay plaintiff's loss, if any; and

if you find that such refusal was willful and without reasonable cause, as the facts appeared to a reasonable and prudent man before the filing of this suit, then you may, in addition to the amount due on the policy and interest, allow the plaintiff damages not exceeding ten per cent (10%) on the amount of the loss and a reasonable attorney's fee.''

The giving of such instruction at once raises the question of whether or not there was substantial evidence in the record that justified the jury in awarding respondent an additional amount on the proven damages to such car, for vexatious delay, and also attorney's fees for the necessity of filing and prosecuting the suit to a conclusion.

In 38 C. J., pages 253 and 354, it is said:

''In a legal sense, any unlawful act done willfully and purposely to the injury of another is, as against that person, malicious. In this latter sense, an act may be malicious even if it springs from good motives and is without express malice:''

Malice in that sense is vexatious. 67 C. J. 241.

In National Battery Co. v. Standard Accident Insurance Co. 41 S. W. (2d) 599, 605, 226 Mo. App. 351, the Kansas City Court of Appeals said:

''The insurer may not willfully obstruct the rights of the insured, fret and harass him without a rational cause and escape the penalty the statute provides for so doing.''

In this case there was no question about the policy being in force or that the accident to the automobile occurred within the period of time which was covered by such policy. The only question was the amount of damages the holder of such policy suffered. There was no proof that respondent had suffered no loss whatever. He did claim greater loss than appellant conceded. There was no evidence, however, that such automobile could have been brought back after repairs in as good condition as it was in at the time of such collision. The evidence tended to show only a junk value of $40.00 of the automobile, after such collision. It was after suit was filed that appellant pleaded that respondent would not accept any of the amounts previously offered by appellant.

The Kansas City Court of Appeals followed the National Battery case in the case of Chernus v. Kennedy-Coats Const. Co., et al., 55 S. W. (2d) 744, particularly in local citation, page 752, and cases there cited.

See also Block v. United States Fidelity & Guaranty Co. of Baltimore, Md., 290 S. W. 429, 441, 316 Mo. 278.

There certainly was vexatious failure and refusal on the part of appellant, before suit was filed, to pay respondent the loss properly claimed by him, as shown by the evidence.

On its claim that respondent was not entitled to recover punitive damages, appellant cites Revised Statutes of Missouri 1939, Sec. 6040,

(now Sec. 375.420, R. S. Mo. 1949). The statute provides that, in any action against an insurance company to recover the amount of any loss under such policy, if it appears from the evidence that such insurance company has vexatiously refused to pay the loss sustained by insured, the jury, in addition to the actual amount of such loss, may award the insured a further sum, not to exceed 10% of such actual loss, and a reasonable attorney's fee. Instruction 2 followed that statute in all respects.

Appellant also cites Connell v. Camden Fire Insurance Ass'n of Camden, N. J., 109 S. W. (2d) 59. It appeared that the verdict returned by the jury in that case was not in the exact form required by the statute quoted. As we understand the local citation in that case at page 72 thereof, the finding of the jury of interest on the amount of the actual loss suffered by the holder of the insurance policy, for vexatious delay in payment thereof, was improperly allowed by the jury. Section 6040, R. S. No. 1939, does not provide for damages for vexatious delay on any item, except the actual loss sustained. The jury in this case seems to have been too liberal in awarding plaintiff 10% damages for vexatious delay, on the interest allowed by the jury on plaintiff's alleged loss. As was done in the case cited, such error does not necessarily result in reversal of the judgment. That overallowance may be cured by a remittitur of $1.50, which remittitur respondent should be required to make, if the verdict be otherwise held to have been properly rendered.

That brings us to the question of whether or not, before suit was filed, appellant had vexatiously refused to pay the actual loss sustained by respondent. Appellant contended that the automobile was of some value, even after collision. While respondent and his witnesses contended that the automobile was valueless, after such collision, there was substantial evidence pro and con on that question, and the jury found the fact to be that the automobile then had no value and that respondent had sustained, as a loss, the entire value of such automobile, and we are not to construe such evidence otherwise than as did the jury, which saw and heard all of the witnesses, who testified on such issue. (See cases above cited on the conclusiveness of the verdict of a jury, when based on substantial evidence.)

This was true even in spite of appellant's evidence tending to prove that such automobile was of some actual value, (more than mere junk value) after such collision. Admittedly, there was quite a bit of delay in settling respondent's loss. The accident occurred on or about October 23, 1949, and the answer before us was filed December 23, 1949, or two months after the collision. There is no question, but that appellant knew fully about the collision the very next day after it happened.

One Snyder, a dealer in old and new automobiles, not only testified to the value of the automobile, before the collision, but testified that,

after the collision, such automobile had no marketable value whatever, and then had only junk value; that only automobile dealers, and not the general public, had any interest in such junk value, which could not exceed $40.00, even to a junk dealer. (This may have been the basis for the remittitur required by the trial court later discussed.)

There was, therefore, substantial evidence that, after the collision, the automobile of respondent had only junk value to a dealer in old automobiles and had no actual market value to the general buying public, and, with such knowledge, appellant failed for two months to adjust the loss based, even on its contention that the automobile had some actual value after the collision.

The jury had substantial evidence that such delay was unnecessary and that appellant had vexatiously failed and refused to make the necessary adjustment promptly. We hold that appellant's contention that the jury had no right, under the evidence, to award respondent damages for vexatious delay, must be overruled.

Appellant made objection to instruction 2 alleging that it is broader than the pleadings and the evidence. The petition alleged, and the evidence of respondent tended to show, that appellant agreed to pay respondent the actual amount of any loss sustained, with a deduction of $50.00 from such loss, for a period concededly covering the time of the collision. The petition alleged that such cash value was $650.00, less the $50.00 deduction. The verdict of the jury is supported by the testimony of respondent's witnesses, as we have held above. Its verdict was in the sum of $600.00 actual damages, without specific mention of any imposition of a penalty on interest on such actual damages, or the deductible amount. So far as a penalty on such interest is concerned, such an allowance was improper, and a remittitur therefor is justified.

A remittitur of $40.00 has already been required by the trial court. The propriety of such remittitur is not before us.

The verdict finding that respondent's actual loss was in view of the trial court's instructions, convinces us that has already taken into account the deductible sum of $50.00, in fixing respondent's actual loss. No further remittitur was required by the trial court, and, in the light of the trial court's instructions, we will require no further remittitur here.

But it is our holding that respondent should make a further remittitur of $1.50, in addition to the remittitur required by the trial court, to cover the penalty on the interest improperly allowed by the jury, as heretofore discussed.

Upon such further remittitur of $1.50 being made by respondent, the judgment should be affirmed. Should respondent refuse to make such further remittitur, the judgment should be reversed and the case returned to the circuit court for retrial. It is so ordered. *Vandeventer, P. J.,* and *McDowell, J.,* concur.