Anna Virginia HAASE, Plaintiff-Respondent,

v.

BUSINESS MEN'S ASSURANCE COMPANY OF AMERICA, a Corporation, Defendant-Appellant.

No. 22110.

Kansas City Court of Appeals.

Missouri.

Feb. 7, 1955.

George L. Gordon, Donald W. Johnson, Kansas City, for appellant.

Joe E. Burris, Kansas City, for respondent.

## BROADDUS, Judge.

This is a suit on a life insurance contract. A jury was waived and the case tried to the court. Judgment was rendered against the defendant insurance company for the sum of $3,182.56, which sum included the face amount of the certificate sued on together with $232.56 interest, $200 damages, and an attorney's fee of $750. Defendant has appealed.

In 1928 William H. Haase was employed by Richards & Conover Hardware Company in Kansas City, Missouri. At that time Richards & Conover took out with defendant a group policy, No. G-106, covering the lives of the employees of the hardware company. As stated, Haase was then an employee of the hardware company and, under the group policy, he was issued Certificate No. 83 insuring his life initially in the amount of $1,800, the certificate providing that upon the contingencies therein named the insurance thus provided for would be increased to $2,000. At that time Haase was married to his first wife, Lorena, and he designated her as his beneficiary.

On August 28, 1945, marital difficulties having arisen between them, Haase and his then wife, Lorena, entered into a property settlement agreement in contemplation of divorce, which, among other things, provided that he would "keep in full force and effect by payment of all premiums and charges due thereon," the above certificate which then had a face value of $2,000, and would irrevocably designate Lorena Haase as the beneficiary therein. And, to carry that agreement into effect, the certificate (No. 83) was delivered to Lorena's attorney, together with an original and duplicate copy of an assignment executed and acknowledged by Haase. The assignment was forwarded to defendant, and defendant acknowledged its receipt. A memorandum of the assignment was endorsed by the defendant insurance company upon the registration card in its files.

On August 14, 1946, insured's employer, Richards & Conover, the master policy holder, upon insured's request directed defendant to cancel Certificate No. 83. This requested cancellation was effected by defendant by entering in red ink on the record or registration card kept by it, in the cancellation column thereon, under the word "cancelled" the figures "8-1-46." In addition defendant sent to Richards & Conover its statement of cancellation for the month of August, 1946, showing Certificate No. 83 on the life of Haase, in the sum of $2,000, as being cancelled, and passed a credit to Richards & Conover for $25.82, which represented the unearned premium for the five remaining months of 1946. This refund was either given to Haase by a Richards & Conover check, or credited to his personal account with the company. Following all this Haase was dropped by defendant from its records and census of employees insured under the group policy and his name was not included by it in its statement of insured employees on January 1, 1947, the anniversary date of the policy. Between August 1, 1946, the date of cancellation, and March 1, 1947, no premium was paid and none was ever claimed or demanded by defendant for insurance upon the life of Haase. This, ac-

cording to defendant's supervisor of records, "was because there was no insurance in force during that period."

On February 19, 1947, Richards & Conover wrote defendant reciting the prior cancellation and saying that Haase wanted the policy reinstated with his wife (plaintiff) as beneficiary. (The record does not show the date of Haase's marriage to plaintiff.) This letter asked for a *new certificate and record card,* the amount of charges for the insurance, and advised defendant that Haase would personally have to pay this premium. Pursuant to this request defendant prepared and sent to Richards & Conover for delivery to Haase, the new certificate and the new record card. This new certificate bears the same number, 83, as the cancelled one. It has upon it defendant's stamp mark "This certificate replaces and voids all previous certificates." On its face in the place provided for the insertion of the beneficiary's name appears the dotted out name of insured's first wife, followed by the word "over", and on the back in the place provided for the registering changes of beneficiary appears the name of plaintiff.

In neither the February 19, 1947, letter nor at any subsequent time did Richards & Conover request a change of beneficiary from Lorena Haase to Anna Virginia Haase, plaintiff. Subsequently defendant sent to Richards & Conover its statement of additions and increases, charging $54.86 premium on the Haase insurance under the new certificate for the remaining months of the year 1947. Thereafter Haase continued to be an insured employee under the group policy as well as an employee of Richards & Conover until his death on December 6, 1951 on which date, according to the records of Richards & Conover, the beneficiary of Haase's insurance was his then wife, Anna Virginia Haase, plaintiff.

Following insured's death, and on December 22, 1951, Richards & Conover sent to defendant, by letter "Master Policy Owner's Statement" of proof of death, making claim for the benefits due under Group Policy No. G-106, Certificate No.

83 in behalf of plaintiff as beneficiary and wife of insured. In response to the above request, defendant, by letter dated December 28, 1951, advised Richards & Conover that it had paid Lorena Haase the benefits due under the group life certificate, who was, according to their records, the beneficiary as well as the assignee under the policy.

Defendant's first point is that "insured's first wife, by her property settlement with insured, acquired a vested interest in the insurance of which she could not be deprived without her consent; and the attempted change of beneficiary was invalid and ineffective."

■ Defendant treats the August 28, 1945, contract between insured, Haase, and his first wife, Lorena, as though it (defendant) was a party to it with full rights to enforce it and to claim a breach of that contract as a defense here. The 1945 property settlement agreement was a contract solely between Haase and his then wife and was not in any sense made for the benefit of defendant. The general rule is thus stated in 12 Am.Jur. page 818, sec. 273: "Ordinarily, the obligations arising out of a contract are due only to those with whom it is made; a contract cannot be enforced by a person who is not a party to it or in privity with it." See also 17 C.J.S., Contracts, § 518, page 1112.

The language used by our Supreme Court in the case of First National Bank of Beeville, Texas v. Security Mutual Life Ins. Co., 283 Mo. 336, 222 S.W. 832, is applicable to the instant case. In that case one Kennedy was indebted to the Bank (respondent) in the sum of $1,034.65. He pledged an insurance policy which had been issued to him by the insurance company (appellant) for the payment of this debt. Later advancements were made to Kennedy and a controversy arose between the bank and the insurance company resulting in the filing of a suit. In the course of the opinion the court said, 283 Mo. loc. cit. 346, 222 S.W. loc. cit. 835:

"Appellant next argues that Mrs. Kennedy was the beneficiary of the pol-

icy; that the only consent she ever gave to the assignment was to the effect that the policy might be pledged to secure her husband's indebtedness to respondent in the sum of $1,034.65, and that all subsequent arrangements were between the respondent and the insured only, and without her knowledge or consent, and were void as to her; that when the insured assigned the policy outright to appellant, this arrangement was a cancellation of the debt for which Mrs. Kennedy pledged the policy, and the pledge was thereby released, and respondent's lien upon the policy was thereby destroyed.

"This argument fails to take into account several important matters. *There is no privity between Mrs. Kennedy and appellant, and on what theory appellant undertakes in this action to assert her rights, is not apparent.*" (Emphasis ours.)

■ Defendant in support of its assertion that insured's first wife acquired a vested interest in the insurance in existence at the time of the assignment and the making of the 1945 property settlement contract, of which she could not be divested by a subsequent change of beneficiary, cites and quotes from the following cases: Fendler v. Roy, 331 Mo. 1083, 58 S.W.2d 459; Shoudy v. Shoudy, 55 Cal.App. 344, 203 P. 433; Thomson v. Thomson, 8 Cir., 156 F.2d 581; Mutual Life Ins. Co. v. Franck, 9 Cal.App. 2d 528, 50 P.2d 480; Columbian Circle v. Mudra, 298 Ill. 599, 132 N.E. 213, 18 A.L.R. 378, and Equitable Life Assur. Soc. v. Wilkins, D.C., 44 F.Supp. 594. A reading of these cases will disclose that they are distinguishable from the case at bar. They are equitable actions, by way of interpleader. In each instance all interested parties were before the court and thus the equities of each could be measured one against the other, whereas, in the instant case assured's first wife, Lorena, was not a party to the litigation. The remedy pursued in the cases defendant relies upon was equally available to defendant, but it did not see fit to take advantage of it. Thus defendant finds itself confronted by the rule laid down in the First National Bank case, supra, and by the text writers above cited, and cannot in the instant action assert Lorena's alleged rights.

■ Defendant's second contention is that the certificate sued on "is not a new contract of insurance; but, on the contrary, is only the reinstatement and continuation of the original insurance."

The undisputed facts show that the master policy holder upon insured's request, by letter, directed defendant to cancel the first certificate. Upon receiving the letter defendant wrote upon its record card the word "cancelled." It returned the unearned premium of $25.82. It dropped Haase from its rolls or census of employees insured under the group policy. It collected no premiums from August 1, 1946, to March 1, 1947. It issued the new certificate and stamped upon it: "This certificate *replaces* and *voids* all previous certificates." Neither the master policy nor the certificates contain any provision for reinstatement. In such a situation reason compels the conclusion that after lapse or cancellation any subsequent contract entered into must be a new contract. And, in this connection it is interesting to note that even in instances in which policies provide for reinstatement our courts have ruled "that a reinstatement of a lapsed policy is in effect a new contract, of insurance." Martin v. Metropolitan Life Ins. Co., Mo. App., 113 S.W.2d 1025, 1026.

■ If defendant intended to adopt the position it now asserts it should have spoken up when it received from insured's employer the letter dated February 19, 1947, asking for a "new certificate". It knew then of the assignment of the 1928 certificate, yet it said nothing to Haase or to Richards & Conover to cause them to believe that plaintiff would not or could not be paid the insurance proceeds in the event of insured's death. Under this state of facts all of the essential elements are present to estop defendant from now claiming reinstatement. Defendant had the right in 1947 to refuse to issue the certificate payable to plaintiff.

Notwithstanding this right it did issue it with full knowledge of the alleged assignment and said nothing, which is certainly inconsistent with the right it then had and of its intention as presently asserted. The contention lacks merit.

All that need be said of defendant's third point is that it, too, is based upon the erroneous view that the certificate sued on was not a new certificate in which plaintiff was the named beneficiary.

Defendant's fourth and last assignment is that the court erred in assessing penalties against it for vexatious refusal to pay. Section 375.420 RSMo 1949, V.A.M.S., providing for such penalties, is highly penal and must be strictly construed. It is not to be invoked to intimidate a good faith defense. Robinson v. Benefit Ass'n of Railway Employees, Mo.App., 183 S.W.2d 407; Sanderson v. New York Life Ins. Co., 239 Mo.App. 688, 194 S.W.2d 221. It has been repeatedly held by our courts that, where there is an open question of law or an issue of fact determinative of the insurer's liability, the insurer, acting in good faith, may insist upon a judicial determination of such question or issue without being penalized therefor. De Valpine v. New York Life Ins. Co., Mo.App., 131 S.W.2d 349; Rieger v. Mutual Life Ins. Co., 234 Mo.App. 93, 110 S.W.2d 878. In the instant case there was no evidence of bad faith on the part of defendant. On the other hand the record discloses that defendant had reasonable grounds to believe that it had a meritorious defense. It follows that the court erred in assessing penalties against defendant for alleged vexatious refusal to pay.

If plaintiff will within 15 days from the announcement of this opinion file a remittitur of $950, the judgment for the reduced amount of $2,232.56, with interest thereon at the rate of six per cent per annum from December 31, 1953, the date of the original judgment, will be affirmed, otherwise the cause will be reversed and remanded. It is so ordered.

All concur.